Electronically Filed by Superior Court of California, County of Orange, 12/18/2023 12:44:07 PM.
30-2023-01368331-CU-FR-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By A. Burton, Deputy Clerk.

Tom N. Yacko, Esq. (SBN 310993)
TYacko@LitvakLawGroup.com
**LITVAK LAW GROUP, P.C.**
2424 S.E. Bristol Street, Suite 300
Newport Beach, CA 92660
Tel.: 949.477.4900
*Attorneys for Plaintiffs,* URI LITVAK, and MARIANNE LITVAK

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF ORANGE**

URI LITVAK, an individual, and MARIANNE LITVAK, an individual,

Plaintiffs,

v.

VISTANA SIGNATURE EXPERIENCES, INC., a Delaware corporation; MARRIOTT VACATIONS WORLDWIDE CORPORATION, a Delaware corporation; and ANDREW LAWRENCE O'CONNELL, IV, an individual, and DOES 1 through 10,

Defendants.

**CASE NO.:** 30-2023-01368331-CU-FR-CJC
Assigned To: Judge Erick L. Larsh
Department:

**COMPLAINT FOR:**

1. **FRAUDULENT MISREPRESENTATION;**
2. **INTENTIONAL CONCEALMENT;**
3. **CIVIL THEFT (Cal Pen. Code §496(c); and**
4. **UNFAIR AND DECEPTIVE TRADE PRACTICES (Cal. Bus. & Prof. §17200, *et seq.*).**

**DEMAND FOR JURY TRIAL**

Plaintiffs, URI LITVAK (hereinafter, "Mr. Litvak"), and MARIANNE LITVAK (hereinafter, "Mrs. Litvak") (collectively, "The Litvaks"), through their undersigned counsel, and in accordance with Code of Civil Procedure §425.10, hereby files this complaint and thereby sues the Defendants, VISTANA SIGNATURE EXPERIENCES, INC., a Delaware corporation (hereinafter "Vistana"); MARRIOTT VACATIONS WORLDWIDE CORPORATION, a Delaware corporation (hereinafter "Marriott"); and ANDREW LAWRENCE O'CONNELL, IV,

and individual (hereinafter "O'Connell") (collectively, all Defendants shall be referred to as "Defendants"), and allege as follows:

**THE PARTIES, JURISDICTION AND VENUE**

1. Plaintiff, Mr. Litvak, is an individual who is *sui juris* in all respects, and who resides in Orange County, California.

2. Plaintiff, Mrs. Litvak, is an individual who is *sui juris* in all respects, and who resides in Orange County, California.

3. Defendant, Vistana, is a Delaware corporation whose principal place of business and operations is in Orange County, Florida.

4. Defendant, Marriott, is a Delaware corporation whose principal place of business and operations is in Orange County, Florida.

5. Defendant, O'Connell, is an individual who is *sui juris* in all respects, and who resides in Orange County, Florida.

6. The actions, conduct, and representations of O'Connell were done with the approval, knowledge, and consent of Vistana and Marriott, and The Litvaks are informed and believe that Vistana and Marriott ratified said actions, conduct, and representations of O'Connell.

7. Defendants designated herein as DOE entities are individuals and/or legal entities that are liable to The Litvaks for the claims set forth herein, including, but not limited to, possible alter egos or successors-in-interest of Defendants. Certain transactions, and the true capacities of DOE entities, are presently unknown to The Litvaks and, therefore, The Litvaks sue said Defendants by such fictitious names. The Litvaks will amend this Complaint to assert the true names and capacities of such DOE entities when more information has been ascertained.

8. The true names and capacities, whether individual, corporate, or other forms of business entities, associate or otherwise of Defendant DOES 1 through 10, inclusive and each of them, are either unknown to The Litvaks at the present time or are subject to being brought into this matter as Defendants in a separate action which will follow, and The Litvaks therefore bring this action against each of them by fictitious names.

9. The Litvaks are informed and believe that each of the potential Defendants referenced in this paragraph is an agent, servant, co-conspirator, co-venturer or acted in concert with Defendants in the conduct set out below so as to bind Defendants and/or make them jointly and severally liable for the damages caused to and suffered by it. When the true identities of such parties are ascertained by The Litvaks, through discovery or continued investigation, leave to amend will be sought from this Court permitting insertion thereof in this Complaint and to join them as Defendants in this action or to permit the consolidation of any Defendants or other action filed directly against them and growing out of or closely related to the facts asserted herein with this action.

10. At all relevant times hereto, each Defendant was the agent, servant, employee, co-adventurer, representative, or co-conspirator of each of the other Defendants, and acted with the knowledge, consent, ratification, authorization, and at the direction of each Defendant, or is otherwise responsible in some manner for the occurrences alleged in this Complaint.

11. Upon information and belief, there exists a unity of interest and ownership between the Defendants such that one is inseparable from the other. Therefore, at all times relevant hereto, the Defendants were the alter-ego of each other. The Defendants often hold themselves out to the public without distinction between them.

12. This matter involves money damages in excess of the sum of $25,000, exclusive of interest, fees, and costs.

13. The contracts entered into between The Litvaks and the Defendants were all entered into in Orange County, California, and all obligations to be performed by Defendants were to be performed in Orange County, California, therefore this Court has personal jurisdiction over all named Defendants. Venue is, thus, proper in this Court pursuant to *Cal. Code Civ. Proc.* §§ 395(a) and 395.5.

**GENERAL ALLEGATIONS**

14. This action involves numerous fraudulent misrepresentations and concealments by the Defendants with the intention to induce the public to purchase accommodations, including but not limited to, timeshare interests, various tiers in several membership programs, “exchange

programs," and "point packages" with real cash value to be used in lieu of currency for goods and services offered by Defendants. The exceedingly dishonest business model of the Defendants is one of "bait and switch" whereby Defendants over promise, and under deliver—or fail to deliver at all—thereby constituting unfair and deceptive trade practices. Finally, Defendants have fraudulently induced The Litvaks to pay Defendants $245,000 for promised goods and services which Defendants have wrongfully withheld, and which The Litvaks have not received, all of which amounts to civil theft.

15. Based upon information and belief, at all relevant times alleged herein, Defendants engaged in the sale of accommodations, including but not limited to, timeshare interests and/or vacation ownership, "exchange programs," and short-term products, all of which are subject to regulation by the California Department of Real Estate ("hereinafter, "CDRE") under the authority of the Vacation Ownership and Timeshare Act of 2004 (hereinafter, the "Act"), codified in Cal. Bus. & Prof. §11210, *et seq*.

16. Based upon information and belief, at all relevant times alleged herein, Vistana and Marriott operated in California as providers of accommodations, including but not limited to, timeshare interests and/or vacation ownership, "exchange programs," and short-term products, both within this jurisdiction and around the globe, all of which are regulated by the CDRE pursuant to the Act.

17. Based upon information and belief, at all relevant times alleged herein, Vistana and Marriott operated in California as providers of multisite timeshare plans in which The Litvaks purchased and/or accrued points for use within the multistate timeshare project, which is a "nonspecific timeshare interest[1]," with the right to use accommodations at more than one component site created by or acquired through the timeshare plan's reservation system.

18. Based upon information and belief, at all relevant times alleged herein, O'Connell was and is a licensed real estate broker, currently licensed in Florida under license number BK3120021, with an original license date of May 3, 2005, and currently valid through September 30, 2024. O'Connell is not licensed in California, nor does California offer reciprocity to brokers

[1] Cal. Bus. & Prof. §11212(z)(2)(B).

from any other state, including Florida. Yet, O'Connell was the sales representative who presented the sales pitch to The Litvaks in California.

19. In the early 2000's, The Litvaks became owners/members in "Starwood Vacation Ownership" (which later became known as "Vistana Signature Experiences"), and included timeshare brands "Westin" and "Sheraton." With Starwood Vacation Ownership, owners used a points-based program wherein "StarOptions"—a form of currency—could be used to customize the units, seasons, and resorts that they had access to. Under the Starwood Vacation Ownership program, higher tier owners, like The Litvaks, were permitted to convert their points into stays at other non-timeshare Starwood properties, and to use those points to purchase upgrades at various other resorts.

20. In the year 2002, The Litvaks purchased "Christmas week" at the Westin Maui Villas. Due to the economic recession that took place around 2008, The Litvaks sold that timeshare interest in 2009.

21. As loyal customers, The Litvaks returned to ownership at the Westin Maui Villas around 2011 and were sold an "every-other-year" unit for approximately $35,000. Subsequently, The Litvaks were informed of another ownership interest at the Westin Maui Villas that had been foreclosed upon, leading The Litvaks to purchase that unit for approximately $23,000. Between these two different units at the Westin Maui Villas, The Litvaks enjoyed ownership every year rather than only every-other-year.

22. As an incentive to purchase additional units, The Litvaks were given generous offerings of bonus points that could be used at any time anywhere in the world within the Starwood network. Every unit purchase by The Litvaks included further accumulation of these valuable points, which had an equivalent cash value that was very stable. Because of their loyalty and additional unit purchases, The Litvaks were promised "Platinum Status," which was recognized throughout the Starwood network, even at non-timeshare locations. Platinum Status also allowed The Litvaks to earn even more bonus points, obtain free upgrades and exclusive privileges, and enjoy free meals at the Starwood properties.

23.     On September 23, 2016, Starwood was acquired by Marriott (the "Acquisition"). As a result of this acquisition, an exchange ratio was established for those members who—like The Litvaks—owned Starwood points, but now needed to use them at Marriott properties. The exchange ratio was three-to-one; three Marriott points for each Starwood point. The new point system greatly devalued the currency value of The Litvaks' points because more points were required under the Marriott system than under the Starwood system. The new Marriott point system was also far more complicated than the Starwood point system.

24.     In 2022, The Litvaks were solicited by O'Connell because he and DOE Defendant managers at the Marriott noticed that The Litvaks were staying primarily at 5-star properties on a regular basis, and were using large numbers of points for those bookings and upgrades. O'Connell offered The Litvaks the "Ritz Carlton Upgrade," which was offered at a $185,000 purchase price, *and required The Litvaks to forfeit ownership of their fully paid-for Westin Maui Villa units.* As an inducement to make the purchase, O'Connell and Marriott offered 1.3 million bonus points to be used *anywhere* The Litvaks wanted within the Marriott network. The Litvaks were further induced by being offered "permanent Titanium Status," and the option to purchase around 3 million additional points for use anywhere within the Marriott network.

25.     At no time did any Defendant disclose to The Litvaks that the annual "maintenance fee" associated with their ownership interest would skyrocket to $15,000, which was previously only around $4,000 for both of their Westin Maui Villas units.

25.     On or around February 7, 2022, because of the representations and inducements made by O'Connell, The Litvaks purchased the Ritz Carlton Upgrade, expecting to receive a higher level of service, point redeemability, and quality of accommodations. The Litvaks further shared with O'Connell that since The Litvaks' children were both almost of college age, they had "outgrown" the Vistana properties, like the Westin Maui Villas, and planned on using the 3 million bonus points at 5-star properties, to wit, the Ritz Carlton. Since the time of closing, however, Defendants have, in all respects, failed to deliver what was promised.

26.     Since the "bait and switch" upgrade purchase, The Litvaks can no longer merely exchange a pre-determined number of points for a certain booking, upgrade, or other benefit.

Instead, Marriott charges wildly different (greater) point amounts for the same bookings, upgrades, and other benefits that The Litvaks had grown accustomed to. Moreover, some of the previous bookings, upgrades, and other benefits could now no longer be purchased with The Litvaks' points at all. The inflationary pressure of the Marriott points purchased in 2021 has resulted in catastrophically reduced purchasing power for The Litvaks' points.

27. At no time did any Defendant disclose that Marriott would so inflate the supply of points that their purchasing power would be drastically reduced.

28. Adding insult to injury, after the deal closed in 2022, The Litvaks were informed that the 1.3 million bonus points—for use *anywhere* within the Marriott network—that were given as an inducement to The Litvaks to purchase the Ritz Carlton Upgrade, could only be used within the Vistana network (at 4-star properties like Westin and Sheraton). This was in *direct* contravention to what was promised by O'Connell and DOE Defendants. In reality, the 1.3 million bonus points that were an inducement to purchase the Ritz Carlton Upgrade could not be used at the Ritz Carlton, or any other 5-star property, despite being promised that the bonus points could be used *anywhere* within the Marriott network.

29. Adding to the long list of false promises, The Litvaks were not *immediately* given their permanent Titanium Status, thereby denying them the benefits of that part of the bargain as well. It took several months before The Litvaks were finally given their Titanium Status, which entitled them to guaranteed room upgrades. In typical Marriott fashion, The Litvaks' requested room upgrades were not *at all* guaranteed, leaving them without the upgrades that were a key part of the Ritz Carlton Upgrade purchase. On almost every occasion, when room upgrades were requested, they were given virtually identical rooms with the exact same sets of features and amenities.

30. The Litvaks have tried on many occasions to voice their disappointment to O'Connell, and to "the powers that be" at Marriott, all to no avail. Defendants obstinately refuse to rectify the situation and provide The Litvaks with the benefits of the bargain that were promised when they purchased the Ritz Carlton Upgrade. Indeed, The Litvaks, despite their most reasonable efforts, are now being forced to bring this action to make things right.

**FIRST CAUSE OF ACTION**

**FRAUDULENT MISREPRESENTATION**

**(As Against All Defendants)**

31. The Litvaks repeat and re-allege the preceding allegations of this complaint as if fully set forth herein, and further allege the following:

32. Defendants represented to The Litvaks that the following facts, *inter alia*, were true:

    32a. The 1.3 million bonus points offered by Defendants could be used by The Litvaks *anywhere* within the Marriott network;

    32b. Both Mr. Litvak and Mrs. Litvak would be immediately upgraded to permanent Titanium Status;

    32c. With Titanium Status, The Litvaks would be *guaranteed* room upgrades at every stay in the Marriott network;

    32d. The value of the 3 million points purchased by The Litvaks had a certain value, and represented a consistent currency value.

33. Defendants representations in ¶32a—32d, *inter alia*, were all false, to wit:

    33a. The 1.3 million bonus points offered by Defendants could **not** be used by The Litvaks *anywhere* within the Marriott network;

    33b. Both Mr. Litvak and Mrs. Litvak **were not** immediately upgraded to permanent Titanium Status;

    33c. With Titanium Status, The Litvaks **were not** *guaranteed* room upgrades at every stay in the Marriott network;

    33d. The value of the 3 million points purchased by The Litvaks **did not have** a certain value, and **did not** represent a consistent currency value.

34. Defendants had superior knowledge of all aspects of the Ritz Carlton Upgrade terms, conditions, and limitations, and knew that the representations they were making were false at the time those representations were made. Alternatively, Defendants made each of their representations to The Litvaks in a reckless manner and without regard for their truth.

35. These various fraudulent, misleading statements and nondisclosures were designed to, and intended to, induce The Litvaks to enter into the contract of sale to purchase the Ritz Carlton Upgrade, and then, to consummate the closing of said contract.

36. The Litvaks, in fact, relied on these various fraudulent, misleading statements and nondisclosures in that they, in fact, contracted to purchase the Ritz Carlton Upgrade, and closed on said purchase.

37. Having inferior knowledge to Defendants, The Litvaks reasonably relied on the Defendant's representations, including those made by licensed real estate broker, O'Connell, in deciding to purchase the Ritz Carlton Upgrade.

38. The Litvaks were harmed in the following ways, without limitation:

   38a. The Litvaks could not use their 1.3 million bonus points offered by Defendants could **not** be used *anywhere* within the Marriott network;

   38b. Both Mr. Litvak and Mrs. Litvak **were not** immediately upgraded to permanent Titanium Status, causing them to lose the benefits and privileges associated with said status;

   38c. Despite eventually obtaining Titanium Status, The Litvaks **were not** *guaranteed* room upgrades at every stay in the Marriott network;

   38d. The value of the 3 million points purchased by The Litvaks **did not have** a certain value, and **did not** represent a consistent currency value;

   38e. The benefits promised to The Litvaks upon closing the purchase of the Ritz Carlton Upgrade have not materialized, despite The Litvaks having forfeited their two fully paid-for Westin Maui Villas (approximately $60,000 value), and paying an additional $185,000.

39. Had The Litvaks been aware of the true facts, they would not have agreed to enter into and consummate the purchase of the Ritz Carlton Upgrade.

40. The Litvaks reliance on Defendants' misrepresentations have caused The Litvaks to suffer substantial damages, including the loss of their two fully paid-for Westin Maui Villas with an approximate value of $60,000 value, and have lost the $185,000 purchase price of the Ritz

Carlton Upgrade. Taken together, The Litvaks have been damaged, and seek restitution damages, in an amount not less than $245,000, to be proven at trial.

41. As a legal consequence of the above, The Litvaks are entitled to recover from Defendants legal damages representing all repair and remediation costs, the costs to move and store furniture, the costs of alternate living arrangements, as well as the referenced diminished market value of the Subject Property.

42. Defendants engaged in despicable conduct and acted with willful, reckless, and conscious disregard of the rights of The Litvaks and in doing the things herein alleged were guilty of fraud, oppression, and malice. Accordingly, The Litvaks seek punitive and exemplary damages in an amount according to proof at trial in order to deter future wrongful conduct.

43. Further, The Litvaks are entitled to, and do hereby seek, rescission of the contract(s) and instrumentalities of the Ritz Carlton Upgrade purchase.

**SECOND CAUSE OF ACTION**

**INTENTIONAL CONCEALMENT**

**(As Against All Defendants)**

44. The Litvaks repeat and re-allege the preceding allegations of this complaint as if fully set forth herein, and further allege the following:

45. At the time that The Litvaks entered into the Ritz Carlton Upgrade purchase contract(s), Defendants, and each of them, intentionally failed to reveal and disclose and affirmatively suppressed the following material information, without limitation:

45a. The nature, extent, and amount of increase in "maintenance fees," association dues, or separately billed assessments;

45b. The substantial restrictions on the usability of the 1.3 million bonus points, to wit, that they could only be used at properties that The Litvaks had no desire to stay (Westin and Sheraton properties within the Vistana network);

45c. The currency value of the 3 million points purchased by The Litvaks were subject to change;

      45d.    The fact that the State of California provides a cooling off period, pursuant to Cal. Bus. & Prof. §11238, in the form of a right of rescission which must be exercised within seven business days;

46. At the time the Ritz Carlton Upgrade purchase contract(s) were entered into, The Litvaks were unaware of these material facts, and of Defendants intentional suppression and concealment of material facts and material nondisclosures. In fact, The Litvaks did not come to learn of the full extent of Defendants' concealments until July 2023.

47. Defendants, and each of them, had a strong monetary motivation to deceive The Litvaks into purchasing the Ritz Carlton Upgrade, and did, in fact, successfully deceive The Litvaks into consummating that purchase.

48. Had The Litvaks been aware of the true facts that Defendants intentionally suppressed and concealed, they would not have agreed to enter into and consummate the purchase of the Ritz Carlton Upgrade.

49. Defendants' intentional suppressions and concealments have caused The Litvaks to suffer substantial damages, including the loss of their two fully paid-for Westin Maui Villas with an approximate value of $60,000 value, and have lost the $185,000 purchase price of the Ritz Carlton Upgrade. Taken together, The Litvaks have been damaged, and seek restitution damages, in an amount not less than $245,000, to be proven at trial.

50. As a legal consequence of the above, The Litvaks are entitled to recover from Defendants legal damages representing all repair and remediation costs, the costs to move and store furniture, the costs of alternate living arrangements, as well as the referenced diminished market value of the Subject Property.

51. Defendants engaged in despicable conduct and acted with willful, reckless, and conscious disregard of the rights of The Litvaks and in doing the things herein alleged were guilty of oppression and malice. Accordingly, The Litvaks seek punitive and exemplary damages in an amount according to proof at trial in order to deter future wrongful conduct.

52. Further, The Litvaks are entitled to, and do hereby seek, rescission of the contract(s) and instrumentalities of the Ritz Carlton Upgrade purchase.

**<u>THIRD CAUSE OF ACTION</u>**

**<u>CIVIL THEFT (Cal. Pen. Code §496(c))</u>**

**<u>(As Against All Defendants)</u>**

53. The Litvaks repeat and re-allege the preceding allegations of this complaint as if fully set forth herein, and further allege the following:

54. On information and belief, Defendants, and each of them, acting by himself/itself and/or through one or more agents, received property, including cash, which had been obtained from The Litvaks in a manner that constitutes theft.

55. Defendants, and each of them, knew that the property they received was obtained in a manner that constituted theft.

56. On or around February 7, 2022, The Litvaks entered into one or more contracts with Defendants for the purchase of the Ritz Carlton Upgrade. Defendants, and each of them, represented to The Litvaks that the following facts, *inter alia*, were true:

56a. The 1.3 million bonus points offered by Defendants could be used by The Litvaks *anywhere* within the Marriott network;

56b. Both Mr. Litvak and Mrs. Litvak would be immediately upgraded to permanent Titanium Status;

56c. With Titanium Status, The Litvaks would be *guaranteed* room upgrades at every stay in the Marriott network;

56d. The value of the 1.1 million points purchased by The Litvaks had a certain value, and represented a consistent currency value.

57. In reality, Defendants representations in ¶56a—56d, *inter alia*, were all false, to wit:

57a. The 1.3 million bonus points offered by Defendants could **not** be used by The Litvaks *anywhere* within the Marriott network;

57b. Both Mr. Litvak and Mrs. Litvak **were not** immediately upgraded to permanent Titanium Status;

      57c. With Titanium Status, The Litvaks **were not** *guaranteed* room upgrades at every stay in the Marriott network;

57d. The value of the 3 million points purchased by The Litvaks **did not have** a certain value, and **did not** represent a consistent currency value.

58. Thus, Defendants violated Cal. Pen. Code §496 by misappropriating property belonging to The Litvaks, and by knowingly withholding the property from The Litvaks. Alternatively, Defendants violated Cal. Pen. Code §496 by aiding in obtaining and knowingly withholding The Litvaks' property.

59. The Litvaks have attempted to reach Defendants, including DOE Defendants, to make formal demand for return of the $245,000. Defendants have ignored The Litvaks' attempts.

60. As a direct and proximate result of Defendants' unlawful conduct, The Litvaks have suffered substantial damages, including the loss of their two fully paid-for Westin Maui Villas with an approximate value of $60,000 value, and have lost the $185,000 purchase price of the Ritz Carlton Upgrade. Taken together, The Litvaks have been damaged, in an amount not less than $245,000, to be proven at trial.

61. Moreover, The Litvaks are entitled to, and do hereby seek, treble damages, the costs of bringing this suit, and attorneys' fees pursuant to Cal. Pen. Code §496(c).

**FOURTH CAUSE OF ACTION**

**UNFAIR AND DECEPTIVE TRADE PRACTICES (Cal. Bus. & Prof. §17200, *et seq.*)**

**(As Against All Defendants)**

62. The Litvaks repeat and re-allege the preceding allegations of this complaint as if fully set forth herein, and further allege the following:

63. Cal. Bus. & Prof. §17200, *et seq*., prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice…" and conduct which is "likely to deceive" and is "fraudulent" within the meaning of §17200, *et seq*.

64. As set forth above, Defendants, and each of them, repeatedly made to The Litvaks numerous fraudulent misrepresentations of material facts, and further engaged in the intentional suppression and concealment of material facts, all to the great harm and detriment of The Litvaks.

65. As set forth at length above, Defendants acts and practices were likely to deceive The Litvaks, constituting fraudulent business practices or acts.

66. In fact, Defendants, and each of them, intended to deceive The Litvaks because, *inter alia*, they failed or refused to disclose the truth regarding the terms, conditions, and limitations of the Ritz Carlton Upgrade, the usability of the benefits and privileges purchased by The Litvaks, the true nature of the consideration that The Litvaks would receive upon consummation of the purchase, and the maintenance fees and other assessments that The Litvaks would be charged with upon such consummation.

67. The misrepresentations and omissions of Defendants amount to fraudulent representations made to The Litvaks.

68. These predicate acts are therefore *per se* violations of Cal. Bus. & Prof. §17200, *et seq*.

69. These acts and practices, as described in the previous paragraphs, are unfair and violate Cal. Bus. § Prof. §17200, *et seq.*, because they violate all the previously cited statutes, as well as Cal Civ. Code. §1709, and consequently, constitute unfair, unlawful, and deceptive business practices within the meaning of Cal. Bus. & Prof. §17200, *et seq.*

70. As a direct and proximate result of Defendants' unlawful conduct, The Litvaks have suffered substantial damages, including the loss of their two fully paid-for Westin Maui Villas with an approximate value of $60,000 value, and have lost the $185,000 purchase price of the Ritz Carlton Upgrade. Taken together, The Litvaks have been damaged, in an amount not less than $245,000, to be proven at trial, exclusive of attorneys' fees and related costs.

71. The Litvaks further seek injunctive relief, restitution and restitutionary disgorgement of all ill-gotten gains from Defendants as specifically provided in Cal. Bus. & Prof. §17203.

## PRAYER FOR RELIEF

**WHEREFORE,** The Litvaks pray for judgment against Defendants, and each of them, as follows:

1. Grant judgment in favor of The Litvaks against Defendants jointly and severally;

2. Award The Litvaks an appropriate amount in monetary damages as determined at trial, but in no event less than $245,000, including pre- and post-judgment interest, and treble damages under Cal. Pen. Code §496(c);
3. For an award of attorney's fees as permitted by statute or contract;
4. For restitution and disgorgement of all monies that were fraudulently obtained by Defendants;
5. As to all Causes of Action, for exemplary damages against all Defendants in an amount sufficient to deter Defendants from engaging in such conduct in the future (pursuant to Cal. Civ. Code §3294);
6. For costs of suit herein; and
7. For any such other relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

The Litvaks demand a trial by jury on all claims that are so triable as of right.

DATED: December 18, 2023

**LITVAK LAW GROUP, P. C.**

Tom N. Yacko, Esq.
*Attorneys for Plaintiffs, URI LITVAK and MARIANNE LITVAK*

Electronically Filed by Superior Court of California, County of Orange, 12/18/2023 12:44:07 PM.
30-2023-01368331-CU-FR-CJC - ROA # 3 - DAVID H. YAMASAKI, Clerk of the Court By A. Burton, Deputy Clerk.

**CM-010**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:
Tom N. Yacko, Esq. (SBN 310993)
LITVAK LAW GROUP, P.C.
2424 SE Bristol Street, Suite 300
Newport Beach, CA 92660
TELEPHONE NO.: (949)477-4900 FAX NO. *(Optional)*:
E-MAIL ADDRESS: TYacko@LitvakLawGroup.com
ATTORNEY FOR *(Name)*: Plaintiffs, URI LITVAK and MARIANNE LITVAK

*FOR COURT USE ONLY*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** ORANGE
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

CASE NAME:
URI LITVAK, et al. v. VISTANA SIGNATURE EXPERIENCES, INC., et al.

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: 30-2023-01368331-CU-FR-CJC |
|---|---|---|
| ☑ **Unlimited** (Amount demanded exceeds $25,000) ☐ **Limited** (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: Assigned for All Purposes<br>DEPT.: Judge Erick L. Larsh |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☑ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. ☑ monetary b. ☐ nonmonetary; declaratory or injunctive relief c. ☐ punitive
4. Number of causes of action *(specify)*:
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 15, 2023
Tom N. Yacko, Esq.
(TYPE OR PRINT NAME) ▶ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

**Page 1 of 2**

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. September 1, 2021]
CEB Essential Forms ceb.com
**CIVIL CASE COVER SHEET**
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courts.ca.gov*

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief from Late Claim
  - Other Civil Petition

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF ORANGE

**Superior Court of California, County of Orange**

700 W. Civic Center Drive
Santa Ana, CA 92702

**E-Filing Transaction #:** 11238049

## PAYMENT RECEIPT

**Receipt #:** 13166312

**Clerk ID:** aburton **Transaction No:** 13338173 **Transaction Date:** 12/20/2023 **Transaction Time:** 01:09:12 PM

| Case Number | Fee Type | Qty | Fee Amount$ | Balance Due | Amount Paid | Remaining Balance |
|---|---|---|---|---|---|---|
| 30-2023-01368331-CU-FR-CJC | 194 - Complaint or other 1st paper | 1 | $435.00 | $435.00 | $435.00 | $0.00 |
| | | | | Sales Tax: | $0.00 | |
| | | | | **Total:** | **$435.00** | **Total Rem. Bal:** |

E-Filing : - OneLegal

E-Filing: $435.00

Total Amount Tendered: $435.00

Change Due: **$0.00**

Balance: **$0.00**

A $45 fee may be charged for each returned check, electronic funds transfer or credit card payment.

**COPY**