1
2
3
4
5
6

Tom N. Yacko, Esq. (SBN 310993)
TYacko@LitvakLawGroup.com
**LITVAK LAW GROUP, P.C.**
2424 S.E. Bristol Street, Suite 300
Newport Beach, CA 92660
Tel.: 949.477.4900
*Attorneys for Plaintiffs,* URI LITVAK
and MARIANNE LITVAK

7
8

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

9
10

URI LITVAK an individual, and
MARIANNE LITVAK, an individual,

11

Plaintiffs,

12

vs.

13
14
15
16
17
18
19

VISTANA SIGNATURE EXPERIENCES,
INC. a Delaware corporation; MARRIOTT
VACATIONS WORLDWIDE
CORPORATION, a Delaware corporation;
ANDREW LAWRENCE O'CONNELL,
IV, an individual; and FLEX
COLLECTION, LLC., a Florida limited
liability company and DOES 2 through 10,

Defendants.

Case No.: 8:24-cv-00139

Assigned to: John W. Holcomb
Department: 9D

**FIRST AMENDED COMPLAINT FOR:**
1. **FRAUDLUENT MISREPRESENTATION;**
2. **INTENTIONAL CONCEALMENT;**
3. **CIVIL THEFT (Cal Penal Code §496(c);**
4. **UNFAIR AND DECEPTIVE TRADE PRACTICES (Cal Bus. & Prof. Code §17200,** *et seq.***);**
5. **SECURITIES FRAUD (Cal Corps. Code §25401** *et seq.***. and**
6. **VIOLATIONS OF VACATION OWNERSHIP AND TIME-SHARE ACT OF 2004 (Cal. Bus. & Prof. §11210,** *et seq.*

**DEMAND FOR JURY TRIAL**

20
21
23
24
25
26
27
28

Plaintiffs, URI LITVAK (hereinafter, "Mr. Litvak"), and MARIANNE LITVAK (hereinafter, "Mrs. Litvak") (collectively, "The Litvaks"), through their undersigned counsel, and in accordance with Code of Civil Procedure §425.10, hereby file this First Amended Complaint against Defendants, VISTANA SIGNATURE EXPERIENCES, INC., a Delaware corporation (hereinafter "Vistana"); FLEX COLLECTION, LLC, a Florida limited liability company

(hereinafter "Flex"); MARRIOTT VACATIONS WORLDWIDE CORPORATION, a Delaware corporation (hereinafter "Marriott"); and ANDREW LAWRENCE O'CONNELL, IV, and individual (hereinafter "O'Connell") (collectively, all Defendants shall be referred to as "Defendants"), and allege as follows:

## THE PARTIES, JURISDICTION AND VENUE

1.      Plaintiff, Mr. Litvak, is an individual who is *sui juris* in all respects, and who resides in Orange County, California.

2.      Plaintiff, Mrs. Litvak, is an individual who is *sui juris* in all respects, and who resides in Orange County, California.

3.      Defendant, Vistana, is a Delaware corporation whose principal place of business and operations is in Orange County, Florida.

4.      Defendant, Flex, is a Florida limited liability company whose principal place of business and operations is in Orange County, Florida.

5.      Defendant, Marriott, is a Delaware corporation whose principal place of business and operations is in Orange County, Florida.

6.      Defendant, O'Connell, is an individual who is *sui juris* in all respects, and who resides in Orange County, Florida.

7.      The actions, conduct, and representations of O'Connell were done with the approval, knowledge, and consent of Vistana, Flex, and Marriott, and The Litvaks are informed and believe that Vistana, Flex, and Marriott ratified said actions, conduct, and representations of O'Connell.

8.      Defendants designated herein as DOE entities are individuals and/or legal entities that are liable to The Litvaks for the claims set forth herein, including, but not limited to, possible alter egos or successors-in-interest of Defendants.  Certain transactions, and the true capacities of DOE entities, are presently unknown to The Litvaks and, therefore, The Litvaks sue said Defendants by such fictitious names.  The Litvaks will amend this Complaint to assert the true names and capacities of such DOE entities when more information has been ascertained.

FIRST AMENDED COMPLAINT

9.     The true names and capacities, whether individual, corporate, or other forms of business entities, associate or otherwise of Defendant DOES 2 through 10, inclusive and each of them, are either unknown to The Litvaks at the present time or are subject to being brought into this matter as Defendants in a separate action which will follow, and The Litvaks therefore bring this action against each of them by fictitious names.  The Litvaks have now ascertained that the identity  of DOE Defendant previously named as DOE 1 is Flex Collection, LLC ("Flex") and have now named Flex in place of DOE 1.

10.    The Litvaks are informed and believe that each of the potential Defendants referenced in this paragraph is an agent, servant, co-conspirator, co-venturer or acted in concert with Defendants in the conduct set out below so as to bind Defendants and/or make them jointly and severally liable for the damages caused to and suffered by it.  When the true identities of such parties are ascertained by The Litvaks, through discovery or continued investigation, leave to amend will be sought from this Court permitting insertion thereof in this Complaint and to join them as Defendants in this action or to permit the consolidation of any Defendants or other action filed directly against them and growing out of or closely related to the facts asserted herein with this action.

11.    At all relevant times hereto, each Defendant was the agent, servant, employee, co-adventurer, representative, or co-conspirator of each of the other Defendants, and acted with the knowledge, consent, ratification, authorization, and at the direction of each Defendant, or is otherwise responsible in some manner for the occurrences alleged in this Complaint.

12.    Upon information and belief, there exists a unity of interest and ownership between the Defendants such that one is inseparable from the other.  Therefore, at all times relevant hereto, the Defendants were the alter-ego of each other.  The Defendants often hold themselves out to the public without distinction between them.

13.    This matter involves money damages in excess of the sum of $25,000, exclusive of interest, fees, and costs.

14.    The contracts entered into between The Litvaks and the Defendants were all entered into in Orange County, California, and all obligations to be performed by Defendants were to be performed in Orange County, California, therefore this Court has personal jurisdiction over all named Defendants. Venue is, thus, proper in this Court pursuant to *Cal. Code Civ. Proc.* §§ 395(a) and 395.5.

## GENERAL ALLEGATIONS

15.    This action involves numerous fraudulent misrepresentations and concealments by the Defendants with the intention to induce the public to purchase accommodations, including but not limited to, securities, timeshare interests, various tiers in several membership programs, "exchange programs," and "point packages" with real cash value to be used in lieu of currency for goods and services offered by Defendants. The exceedingly dishonest business model of the Defendants is one of "bait and switch" whereby Defendants over promise, and under deliver—or fail to deliver at all—thereby constituting unfair and deceptive trade practices. Finally, Defendants have fraudulently induced The Litvaks to pay Defendants $245,000 for securities, promised goods and services which Defendants have wrongfully withheld, and which The Litvaks have not received, all of which amounts to civil theft.

16.    Based upon information and belief, at all relevant times alleged herein, Defendants engaged in the sale of securities and accommodations, including but not limited to, timeshare interests and/or vacation ownership, "exchange programs," and short-term products, all of which are subject to regulation by the California Department of Real Estate ("hereinafter, "CDRE") under the authority of the Vacation Ownership and Timeshare Act of 2004 (hereinafter, the "Act"), codified in Cal. Bus. & Prof. §11210, *et seq.*

17.    Based upon information and belief, at all relevant times alleged herein, Vistana, Flex, and Marriott operated in California as providers of accommodations, including but not limited to, timeshare interests and/or vacation ownership, "exchange programs," and short-term products, both within this jurisdiction and around the globe, all of which are regulated by the CDRE pursuant to the Act.

FIRST AMENDED COMPLAINT

18.     Based upon information and belief, at all relevant times alleged herein, Vistana, Flex, and Marriott operated in California as providers of multisite timeshare plans in which The Litvaks purchased and/or accrued points for use within the multistate timeshare project, which is a "nonspecific timeshare interest[1]," with the right to use accommodations at more than one component site created by or acquired through the timeshare plan's reservation system.

19.     Based upon information and belief, at all relevant times alleged herein, O'Connell was and is a licensed real estate broker, currently licensed in Florida under license number BK3120021, with an original license date of May 3, 2005, and currently valid through September 30, 2024. O'Connell is not licensed in California, nor does California offer reciprocity to brokers from any other state, including Florida. Yet, O'Connell was the sales representative for Defendants who presented the sales pitch to The Litvaks in California.

20.     In the early 2000's, The Litvaks became owners/members in "Starwood Vacation Ownership" (which later became known as "Vistana Signature Experiences"), and included timeshare brands "Westin" and "Sheraton." With Starwood Vacation Ownership, owners used a points-based program wherein "StarOptions"—a form of currency—could be used to customize the units, seasons, and resorts that they had access to. Under the Starwood Vacation Ownership program, higher tier owners, like The Litvaks, were permitted to convert their points into stays at other non-timeshare Starwood properties, and to use those points to purchase upgrades at various other resorts.

21.     In the year 2002, The Litvaks purchased "Christmas week" at the Westin Maui Villas. Due to the economic recession that took place around 2008, The Litvaks sold that timeshare interest in 2009.

22.     As loyal customers, The Litvaks returned to ownership at the Westin Maui Villas around 2011 and were sold an "every-other-year" unit for approximately $35,000. Subsequently, The Litvaks were informed of another ownership interest at the Westin Maui Villas that had been foreclosed upon, leading The Litvaks to purchase that unit for approximately $23,000. Between

---

[1] Cal. Bus. & Prof. §11212(z)(2)(B).

FIRST AMENDED COMPLAINT

these two different units at the Westin Maui Villas, The Litvaks enjoyed ownership every year rather than only every-other-year.

23.    As an incentive to purchase additional units, The Litvaks were given generous offerings of bonus points that could be used at any time anywhere in the world within the Starwood network. Every unit purchase by The Litvaks included further accumulation of these valuable points, which had an equivalent cash value that was very stable. Because of their loyalty and additional unit purchases, The Litvaks were promised "Platinum Status," which was recognized throughout the Starwood network, even at non-timeshare locations. Platinum Status also allowed The Litvaks to earn even more bonus points, obtain free upgrades and exclusive privileges, and enjoy free meals at the Starwood properties.

24.    On September 23, 2016, Starwood was acquired by Marriott (the "Acquisition"). As a result of this acquisition, an exchange ratio was established for those members who—like The Litvaks—owned Starwood points, but now needed to use them at Marriott properties. The exchange ratio was three-to-one; three Marriott points for each Starwood point. The new point system greatly devalued the currency value of The Litvaks' points because more points were required under the Marriott system than under the Starwood system. The new Marriott point system was also far more complicated than the Starwood point system.

25.    In or around January and February 2022, The Litvaks were solicited by O'Connell, Flex, Marriott and Vistana because they and DOE Defendant managers at the Marriott noticed that The Litvaks were staying primarily at 5-star properties on a regular basis, and were using large numbers of points for those bookings and upgrades. O'Connell, Flex, Marriott and Vistana offered The Litvaks the "Ritz Carlton Upgrade," which was offered at a $185,000 purchase price, *and required The Litvaks to forfeit ownership of their fully paid-for Westin Maui Villa units.* As an inducement to make the purchase, O'Connell, Flex, Marriott and Vistana offered 1.3 million bonus points to be used *anywhere* The Litvaks wanted within the Marriott network. The Litvaks were further induced by being offered "permanent Titanium Status," and the option to purchase around 3 million additional points for use anywhere within the Marriott network.

FIRST AMENDED COMPLAINT

26.     At no time did any Defendant disclose to The Litvaks that the annual "maintenance fee" associated with their ownership interest would skyrocket to $15,000, which was previously only around $4,000 for both of their Westin Maui Villas units.

27.     On or around February 7, 2022, because of the representations and inducements made by O'Connell, Flex, Marriott and Vistana, The Litvaks purchased the Ritz Carlton Upgrade pursuant to a purchase and sale agreement in which Flex was named as the seller, expecting to receive a higher level of service, point redeemability, and quality of accommodations. The Litvaks further shared with O'Connell, Flex, Marriott and Vistana that since The Litvaks' children were both almost of college age, they had "outgrown" the Vistana properties, like the Westin Maui Villas, and planned on using the 3 million bonus points at 5-star properties, to wit, the Ritz Carlton. Since the time of closing, however, Defendants have, in all respects, failed to deliver what was promised.

28.     Since the "bait and switch" upgrade purchase, The Litvaks can no longer merely exchange a pre-determined number of points for a certain booking, upgrade, or other benefit. Instead, Marriott charges wildly different (greater) point amounts for the same bookings, upgrades, and other benefits that The Litvaks had grown accustomed to. Moreover, some of the previous bookings, upgrades, and other benefits could now no longer be purchased with The Litvaks' points at all. The inflationary pressure of the Marriott points purchased in 2021 has resulted in catastrophically reduced purchasing power for The Litvaks' points.

29.     At no time did any Defendants disclose that Marriott would so inflate the supply of points that their purchasing power would be drastically reduced.

30.     Adding insult to injury, after the deal closed in 2022, The Litvaks were informed that the 1.3 million bonus points—for use *anywhere* within the Marriott network—that were given as an inducement to The Litvaks to purchase the Ritz Carlton Upgrade, could only be used within the Vistana network (at 4-star properties like Westin and Sheraton). This was in *direct* contravention to what was promised by O'Connell, Flex, Marriott and Vistana and DOE Defendants. In reality, the 1.3 million bonus points that were an inducement to purchase the Ritz

7
FIRST AMENDED COMPLAINT

Carlton Upgrade could not be used at the Ritz Carlton, or any other 5-star property, despite being promised that the bonus points could be used *anywhere* within the Marriott network.

31.    Adding to the long list of false promises, The Litvaks were not *immediately* given their permanent Titanium Status, thereby denying them the benefits of that part of the bargain as well. It took several months before The Litvaks were finally given their Titanium Status, which entitled them to guaranteed room upgrades. In typical Marriott fashion, The Litvaks' requested room upgrades were not *at all* guaranteed, leaving them without the upgrades that were a key part of the Ritz Carlton Upgrade purchase. On almost every occasion, when room upgrades were requested, they were given virtually identical rooms with the exact same sets of features and amenities.

32.    The Litvaks have tried on many occasions to voice their disappointment to O'Connell, and to "the powers that be" at Marriott, all to no avail. Defendants obstinately refuse to rectify the situation and provide The Litvaks with the benefits of the bargain that were promised when they purchased the Ritz Carlton Upgrade. Indeed, The Litvaks, despite their most reasonable efforts, are now being forced to bring this action to make things right.

## FIRST CAUSE OF ACTION

## FRAUDULENT MISREPRESENTATION

### (As Against All Defendants)

33.    The Litvaks repeat and re-allege the preceding allegations of this complaint as if fully set forth herein, and further allege the following:

34.    Defendants represented to The Litvaks that the following facts, *inter alia*, were true:

34a.    The 1.3 million bonus points offered by Defendants could be used by The Litvaks *anywhere* within the Marriott network;

34b.    Both Mr. Litvak and Mrs. Litvak would be immediately upgraded to permanent Titanium Status;

34c.    With Titanium Status, The Litvaks would be *guaranteed* room upgrades at every stay in the Marriott network;

FIRST AMENDED COMPLAINT

34d.    The value of the 3 million points purchased by The Litvaks had a certain value, and represented a consistent currency value.

35.    Defendants representations in ¶34a—34d, *inter alia*, were all false, to wit:

35a.    The 1.3 million bonus points offered by Defendants could **not** be used by The Litvaks *anywhere* within the Marriott network;

35b.    Both Mr. Litvak and Mrs. Litvak **were not** immediately upgraded to permanent Titanium Status;

35c.    With Titanium Status, The Litvaks **were not** *guaranteed* room upgrades at every stay in the Marriott network;

35d.    The value of the 3 million points purchased by The Litvaks **did not have** a certain value, and **did not** represent a consistent currency value.

36.    Defendants had superior knowledge of all aspects of the Ritz Carlton Upgrade terms, conditions, and limitations, and knew that the representations they were making were false at the time those representations were made. Alternatively, Defendants made each of their representations to The Litvaks in a reckless manner and without regard for their truth.

37.    These various fraudulent, misleading statements and nondisclosures were designed to, and intended to, induce The Litvaks to enter into the contract of sale to purchase the Ritz Carlton Upgrade, and then, to consummate the closing of said contract.

38.    The Litvaks, in fact, relied on these various fraudulent, misleading statements and nondisclosures in that they, in fact, contracted to purchase the Ritz Carlton Upgrade, and closed on said purchase.

39.    Having inferior knowledge to Defendants, The Litvaks reasonably relied on the Defendant's representations, including those made by licensed real estate broker, O'Connell, in deciding to purchase the Ritz Carlton Upgrade.

40.    The Litvaks were harmed in the following ways, without limitation:

40a.    The Litvaks could not use their 1.3 million bonus points offered by Defendants could **not** be used *anywhere* within the Marriott network;

40b.    Both Mr. Litvak and Mrs. Litvak **were not** immediately upgraded to permanent Titanium Status, causing them to lose the benefits and privileges associated with said status;

40c.    Despite eventually obtaining Titanium Status, The Litvaks **were not** *guaranteed* room upgrades at every stay in the Marriott network;

40d.    The value of the 3 million points purchased by The Litvaks **did not have** a certain value, and **did not** represent a consistent currency value;

40e.    The benefits promised to The Litvaks upon closing the purchase of the Ritz Carlton Upgrade have not materialized, despite The Litvaks having forfeited their two fully paid-for Westin Maui Villas (approximately $60,000 value), and paying an additional $185,000.

41.    Had The Litvaks been aware of the true facts, they would not have agreed to enter into and consummate the purchase of the Ritz Carlton Upgrade.

42.    The Litvaks reliance on Defendants' misrepresentations have caused The Litvaks to suffer substantial damages, including the loss of their two fully paid-for Westin Maui Villas with an approximate value of $60,000 value, and have lost the $185,000 purchase price of the Ritz Carlton Upgrade. Taken together, The Litvaks have been damaged, and seek restitution damages, in an amount not less than $245,000, to be proven at trial.

43.    As a legal consequence of the above, The Litvaks are entitled to recover from Defendants legal damages representing all repair and remediation costs, the costs to move and store furniture, the costs of alternate living arrangements, as well as the referenced diminished market value of the Subject Property.

44.    Defendants engaged in despicable conduct and acted with willful, reckless, and conscious disregard of the rights of The Litvaks and in doing the things herein alleged were guilty of fraud, oppression, and malice. Accordingly, The Litvaks seek punitive and exemplary damages in an amount according to proof at trial in order to deter future wrongful conduct.

FIRST AMENDED COMPLAINT

45.     Further, The Litvaks are entitled to, and do hereby seek, rescission of the contract(s) and instrumentalities of the Ritz Carlton Upgrade purchase.

## SECOND CAUSE OF ACTION

## INTENTIONAL CONCEALMENT

### (As Against All Defendants)

46.     The Litvaks repeat and re-allege the preceding allegations of this complaint as if fully set forth herein, and further allege the following:

47.     At the time that The Litvaks entered into the Ritz Carlton Upgrade purchase contract(s), Defendants, and each of them, intentionally failed to reveal and disclose and affirmatively suppressed the following material information, without limitation:

47a.     The nature, extent, and amount of increase in "maintenance fees," association dues, or separately billed assessments;

47b.     The substantial restrictions on the usability of the 1.3 million bonus points, to wit, that they could only be used at properties that The Litvaks had no desire to stay (Westin and Sheraton properties within the Vistana network);

47c.     The currency value of the 3 million points purchased by The Litvaks were subject to change;

47d.     The fact that the State of California provides a cooling off period, pursuant to Cal. Bus. & Prof. §11238, in the form of a right of rescission which must be exercised within seven business days;

48.     At the time the Ritz Carlton Upgrade purchase contract(s) were entered into, The Litvaks were unaware of these material facts, and of Defendants intentional suppression and concealment of material facts and material nondisclosures. In fact, The Litvaks did not come to learn of the full extent of Defendants' concealments until July 2023.

49.     Defendants, and each of them, had a strong monetary motivation to deceive The Litvaks into purchasing the Ritz Carlton Upgrade, and did, in fact, successfully deceive The Litvaks into consummating that purchase.

50.     Had The Litvaks been aware of the true facts that Defendants intentionally
suppressed and concealed, they would not have agreed to enter into and consummate the purchase
of the Ritz Carlton Upgrade.

51.     Defendants' intentional suppressions and concealments have caused The Litvaks to
suffer substantial damages, including the loss of their two fully paid-for Westin Maui Villas with
an approximate value of $60,000 value, and have lost the $185,000 purchase price of the Ritz
Carlton Upgrade. Taken together, The Litvaks have been damaged, and seek restitution damages,
in an amount not less than $245,000, to be proven at trial.

52.     As a legal consequence of the above, The Litvaks are entitled to recover from
Defendants legal damages representing all repair and remediation costs, the costs to move and
store furniture, the costs of alternate living arrangements, as well as the referenced diminished
market value of the Subject Property.

53.     Defendants engaged in despicable conduct and acted with willful, reckless, and
conscious disregard of the rights of The Litvaks and in doing the things herein alleged were guilty
of oppression and malice. Accordingly, The Litvaks seek punitive and exemplary damages in an
amount according to proof at trial in order to deter future wrongful conduct.

54.     Further, The Litvaks are entitled to, and do hereby seek, rescission of the contract(s)
and instrumentalities of the Ritz Carlton Upgrade purchase.

## THIRD CAUSE OF ACTION

## CIVIL THEFT (Cal. Pen. Code §496(c))

## (As Against All Defendants)

55.     The Litvaks repeat and re-allege the preceding allegations of this complaint as if
fully set forth herein, and further allege the following:

56.     On information and belief, Defendants, and each of them, acting by himself/itself
and/or through one or more agents, received property, including cash, which had been obtained
from The Litvaks in a manner that constitutes theft.

FIRST AMENDED COMPLAINT

57.     Defendants, and each of them, knew that the property they received was obtained in a manner that constituted theft.

58.     On or around February 7, 2022, The Litvaks entered into one or more contracts with Defendants for the purchase of the Ritz Carlton Upgrade. Defendants, and each of them, represented to The Litvaks that the following facts, *inter alia*, were true:

58a.    The 1.3 million bonus points offered by Defendants could be used by The Litvaks *anywhere* within the Marriott network;

58b.    Both Mr. Litvak and Mrs. Litvak would be immediately upgraded to permanent Titanium Status;

58c.    With Titanium Status, The Litvaks would be *guaranteed* room upgrades at every stay in the Marriott network;

58d.    The value of the 1.1 million points purchased by The Litvaks had a certain value, and represented a consistent currency value.

59.     In reality, Defendants representations in ¶58a—58d, *inter alia*, were all false, to wit:

59a.    The 1.3 million bonus points offered by Defendants could **not** be used by The Litvaks *anywhere* within the Marriott network;

59b.    Both Mr. Litvak and Mrs. Litvak **were not** immediately upgraded to permanent Titanium Status;

59c.    With Titanium Status, The Litvaks **were not** *guaranteed* room upgrades at every stay in the Marriott network;

59d.    The value of the 3 million points purchased by The Litvaks **did not have** a certain value, and **did not** represent a consistent currency value.

60.     Thus, Defendants violated Cal. Pen. Code §496 by misappropriating property belonging to The Litvaks, and by knowingly withholding the property from The Litvaks. Alternatively, Defendants violated Cal. Pen. Code §496 by aiding in obtaining and knowingly withholding The Litvaks' property.

61.     The Litvaks have attempted to reach Defendants, including DOE Defendants, to make formal demand for return of the $245,000. Defendants have ignored The Litvaks' attempts.

62.     As a direct and proximate result of Defendants' unlawful conduct, The Litvaks have suffered substantial damages, including the loss of their two fully paid-for Westin Maui Villas with an approximate value of $60,000 value, and have lost the $185,000 purchase price of the Ritz Carlton Upgrade. Taken together, The Litvaks have been damaged, in an amount not less than $245,000, to be proven at trial.

63.     Moreover, The Litvaks are entitled to, and do hereby seek, treble damages, the costs of bringing this suit, and attorneys' fees pursuant to Cal. Pen. Code §496(c).

## FOURTH CAUSE OF ACTION

## UNFAIR AND DECEPTIVE TRADE PRACTICES (Cal. Bus. & Prof. §17200, *et seq.*)

## (As Against All Defendants)

64.     The Litvaks repeat and re-allege the preceding allegations of this complaint as if fully set forth herein, and further allege the following:

65.     Cal. Bus. & Prof. §17200, *et seq*., prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice…" and conduct which is "likely to deceive" and is "fraudulent" within the meaning of §17200, *et seq.*

66.     As set forth above, Defendants, and each of them, repeatedly made to The Litvaks numerous fraudulent misrepresentations of material facts, and further engaged in the intentional suppression and concealment of material facts, all to the great harm and detriment of The Litvaks.

67.     As set forth at length above, Defendants acts and practices were likely to deceive The Litvaks, constituting fraudulent business practices or acts.

68.     In fact, Defendants, and each of them, intended to deceive The Litvaks because, *inter alia*, they failed or refused to disclose the truth regarding the terms, conditions, and limitations of the Ritz Carlton Upgrade, the usability of the benefits and privileges purchased by The Litvaks, the true nature of the consideration that The Litvaks would receive upon

consummation of the purchase, and the maintenance fees and other assessments that The Litvaks would be charged with upon such consummation.

69.    The misrepresentations and omissions of Defendants amount to fraudulent representations made to The Litvaks.

70.    These predicate acts are therefore *per se* violations of Cal. Bus. & Prof. §17200, *et seq.*

71.    As set forth below, Defendants' misrepresentations, omissions and other unfair and fraudulent business conduct also violates the Vacation Ownership and Time-Share Act of 2004 (Cal. Bus. & Prof. §11210, *et seq.*).

72.    These acts and practices, as described in the previous paragraphs, are unfair and violate Cal. Bus. § Prof. §17200, *et seq.*, because they violate all the previously cited statutes, as well as Cal. Civ. Code. §1709, and consequently, constitute unfair, unlawful, and deceptive business practices within the meaning of Cal. Bus. & Prof. §17200, *et seq.*

73.    As a direct and proximate result of Defendants' unlawful conduct, The Litvaks have suffered substantial damages, including the loss of their two fully paid-for Westin Maui Villas with an approximate value of $60,000 value, and have lost the $185,000 purchase price of the Ritz Carlton Upgrade. Taken together, The Litvaks have been damaged, in an amount not less than $245,000, to be proven at trial, exclusive of attorneys' fees and related costs.

74.    The Litvaks further seek injunctive relief, restitution and restitutionary disgorgement of all ill-gotten gains from Defendants as specifically provided in Cal. Bus. & Prof. §17203.

## <u>FIFTH CAUSE OF ACTION</u>

## <u>SECURITIES FRAUD (Cal. Corps. Code §25401, *et seq.*)</u>

## <u>(As Against All Defendants)</u>

75.    The Litvaks repeat and re-allege the preceding allegations of this complaint as if fully set forth herein, and further allege the following:

76.    Cal. Corporations Code §25401 makes it "unlawful for any person to offer or sell a security in this state, or to buy or offer to buy a security in this state, by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading."

77.    As set forth above, Defendants, and each of them, repeatedly made to The Litvaks numerous fraudulent misrepresentations and untrue statements of material facts, and further engaged in the intentional suppression and concealment of material facts necessary to make the statements made, in light of the circumstances under which the statements were made, not misleading, all to the great harm and detriment of The Litvaks.

78.    Defendants' untrue and fraudulent statements to The Litvaks include the following:

78.a. Defendants represented to The Litvaks that the 1.3 million bonus points offered by the Defendants could be used by The Litvak anywhere within the Marriott network, when in fact they could not;

78.b. Defendants represented to The Litvaks that both Mr. and Mrs. Litvak would be immediately upgraded to permanent "Titanium Status," when in fact neither of The Litvaks was immediately upgraded to permanent Titanium Status;

78.c. Defendants represented to The Litvaks that with the Titanium Status, The Litvaks were guaranteed room upgrades at every stay in the Marriott Network, when in fact The Litvaks were not *guaranteed* room upgrades at every stay in the Marriott network;

78.d. Defendants represented to The Litvaks that the value of the 3 million points The Litvaks purchased had a certain value, and represented a consistent currency value, when in fact the value of the 3 million points purchased by The Litvaks did not have a certain value, and did not represent a consistent currency value.

FIRST AMENDED COMPLAINT

79.    In addition to making untrue statements of material facts to The Litvaks, Defendants also omitted material facts necessary to make their statements to The Litvaks not misleading because, *inter alia*, they failed or refused to disclose the truth regarding the terms, conditions, and limitations of the securities they offered and sold to The Litvaks, the usability of the benefits and privileges purchased by The Litvaks, the true nature of the consideration that The Litvaks would receive upon consummation of the purchase, and the maintenance fees and other assessments that The Litvaks would be charged with upon such consummation.

80.    These untrue and fraudulent statements and omissions of material fact were made by Defendants as a means to offer and sell securities to The Litvaks.

81.    The Litvaks did not know the facts concerning the untruths or omissions made by Defendants. Defendants had superior knowledge of all aspects of the securities offered and sold, and their terms, conditions, and limitations, and knew that the representations and/or omissions they were making were false at the time those representations were made. Alternatively, Defendants failed to exercise reasonable care to ascertain whether their statements and/or omissions were untrue or misleading.

82.    Had The Litvaks been aware of the true facts, they would not have agreed to enter into and consummate the purchase of the securities. However, The Litvaks did purchase the securities from Defendants, in reasonable reliance upon Defendants' untrue statements and omissions of material facts.

83.    As a direct and proximate cause of the Defendants' untrue and fraudulent statements and omissions of material fact, The Litvaks have suffered substantial damages, in an amount not less than $245,000, to be proven at trial.

84.    On information and belief, each of the Defendants were directly or indirectly controlling the other Defendants in making the untrue and fraudulent statements and/or omissions of material fact to The Litvaks in offering and selling them securities, or were partners, officers, directors, or employees who materially aided in the untrue and fraudulent statements and/or omissions, and had knowledge of or reasonable grounds to believe the untrue and fraudulent

FIRST AMENDED COMPLAINT

statements and/or omissions of material fact. Accordingly, each of the Defendants is jointly and severally liable to The Litvaks for their damages caused by the untrue and fraudulent statements and/or omissions of material fact in connection with the offering and sale of securities.

85.    Pursuant to applicable law, including Cal. Corporations Code §§25501, 25501.5, 25504 and 25504.1, The Litvaks are entitled to rescission of the securities purchase contract, including the amount paid for consideration plus interest at the legal rate thereon, or damages plus interest at the legal rate thereon, from Defendants and each of them, in an amount according to proof at trial.

<u>**SIXTH CAUSE OF ACTION**</u>

**VIOLATIONS OF VACATION OWNERSHIP AND TIME-SHARE ACT OF 2004 (Cal. Bus. & Prof. §11210, *et seq*.)**

**(As Against All Defendants)**

86.    The Litvaks repeat and re-allege the preceding allegations of this complaint as if fully set forth herein, and further allege the following:

87.    Defendants, and each of them, offer, sell, develop, and promote Time-Share Interests and/or Time-Share Plans, as defined under Cal. Business and Professions Code §11212, subsections (x) and (z), respectively, in the State of California, and offered, promoted, and sold such Time-Share Interests and/or Time-Share Plans to The Litvaks in the State of California, in the context of the Ritz Carlton Upgrade.

88.    Defendants, and each of them, own, manage, operate, facilitate, offer, promote and sell Exchange Programs, as defined under Cal. Business and Professions Code §11212, subsection (l), in the State of California, and offered, promoted, and sold such Exchange Programs to The Litvaks in the State of California, in the context of the Ritz Carlton Upgrade.

89.    Defendants, and each of them, offer, sell, and promote Incidental Benefits, as defined under Cal. Business and Professions Code §11212, subsection (m), in the State of California, and offered, promoted, and sold such Incidental Benefits to The Litvaks in the State of California, in the context of the Ritz Carlton Upgrade.

FIRST AMENDED COMPLAINT

90.     In advertising, promoting, and offering for sale to The Litvaks the Ritz Carlton Upgrade package and the benefits it entailed, Defendants made or cause to be made untrue and/or misleading statements and omissions to consumers in California, including statements and omissions that violated the Vacation Ownership and Time-Share Act of 2004 ("VOTA").

91.     Defendants made untrue and/or misleading statements, misrepresentations, and omissions to The Litvaks about the nature and quality of the upgrade and the Time-Share Interests, Exchange Programs and/or Incidental Benefits that were being marketed, and the usability and buying power of The Litvaks' bonus points, including the following:

91.a. Defendants represented to The Litvaks that the 1.3 million bonus points offered by the Defendants could be used by The Litvaks anywhere within the Marriott network, when in fact they could not;

91.b. Defendants represented to The Litvaks that both Mr. and Mrs. Litvak would be immediately upgraded to permanent "Titanium Status," when in fact neither of The Litvaks was immediately upgraded to permanent Titanium Status;

91.c. Defendants represented to The Litvaks that with the Titanium Status, The Litvaks were guaranteed room upgrades at every stay in the Marriott Network, when in fact The Litvaks were not *guaranteed* room upgrades at every stay in the Marriott network;

91.d. Defendants represented to The Litvaks that the value of the 3 million points The Litvaks purchased had a certain value, and represented a consistent currency value, when in fact the value of the 3 million points purchased by The Litvaks did not have a certain value, and did not represent a consistent currency value;

91.e. Defendants also omitted material facts necessary to make their statements to The Litvaks not misleading because, *inter alia*, they failed or refused to disclose the truth regarding the terms, conditions, and limitations of the Time-Share Interests, Exchange Programs and/or Incidental Benefits they offered and

sold to The Litvaks, the usability of the benefits and privileges purchased by The
Litvaks, the true nature of the consideration that The Litvaks would receive upon
consummation of the purchase, and the maintenance fees and other assessments
that The Litvaks would be charged with upon such consummation.

92.    The Litvaks reasonably relied on Defendants' untrue and/or misleading statements
and omissions when deciding to purchase the Time-Share Interests, Exchange Programs and/or
Incidental Benefits, which directly caused The Litvaks to suffer harm.

93.    Additionally, Defendants committed the following acts or omissions, in further
violation of VOTA:

93.a.  Defendants failed to provide The Litvaks with a public report as
required under Cal. Business and Professions Code §§11234, and 11238;

93.b.  Defendants failed to provide The Litvaks with all the information
required under Cal. Business and Professions Code §11216, subsection (b) prior to
entering the contract for an Exchange Program;

93.c.  Defendants failed to register the Time-Share Plan with the
commissioner as required under Cal. Business and Professions Code §11226;

93.d.  Defendants failed to provide The Litvaks a copy of the documents
required under Cal. Business and Professions Code §11226.1 before transferring
the interests acquired by The Litvaks;

93.e.  Defendants failed to provide The Litvaks with a disclosure statement
with all the information required under Cal. Business and Professions Code
§11237, subsection (a) related to Incidental Benefits in connection with the sale of
a Time-Share Interest; and

93.f.  Defendants failed to clearly and conspicuously disclose, prior to the
execution of any purchase contract, the annual maintenance and association dues
or any separately billed taxes, as required under Cal. Business and Professions Code
§11245, subsection (a)(10).

93.g Defendants failed to provide in the purchase contract notice of the seven day cancellation period as required by Cal. Business and Professions Code §11238, subsection(a), despite the fact that The Litvaks made an offer to purchase the time-share interest and/or incidental benefits within seven calendar days after attending a sales presentation for said time-share interests and/or incidental benefits, and failed to furnish The Litvaks with a fully completed and executed copy of the contract that included all the information required under Cal. Business and Professions Code §11238, subsection(d).

93.h. Defendant O'Connell at all times relevant herein was not licensed by the CDRE nor does California offer reciprocity to brokers from any other state, including Florida. Yet, O'Connell was the sales representative for Defendants who presented the sales pitch to The Litvaks in California, in further violation of the VOTA and other applicable laws.

94.     The above described conduct by Defendants, and each of them, directly and proximately caused the Litvaks to suffer substantial damages, in an amount not less than $245,000, to be proven at trial.

95.     In addition to damages, The Litvaks seek, and are entitled to, rescission of their purchase of the Ritz Carlton Upgrade. Defendants have denied The Litvaks the rescission to which they are entitled.

96.     The Litvaks are also entitled to recover their costs and reasonable attorneys' fees from Defendants due to Defendants' violations of the VOTA, pursuant to, *inter alia*, Cal. Business and Professions Code §11238(e).

## PRAYER FOR RELIEF

**WHEREFORE,** The Litvaks pray for judgment against Defendants, and each of them, as follows:

FIRST AMENDED COMPLAINT

1. Grant judgment in favor of The Litvaks against Defendants jointly and severally;

2. Award The Litvaks an appropriate amount in monetary damages as determined at trial, but in no event less than $245,000, including pre- and post-judgment interest, and treble damages under Cal. Pen. Code §496(c);

3. For an award of attorney's fees as permitted by statute or contract;

4. For restitution and disgorgement of all monies that were fraudulently obtained by Defendants;

5. As to all Causes of Action, for exemplary damages against all Defendants in an amount sufficient to deter Defendants from engaging in such conduct in the future (pursuant to Cal. Civ. Code §3294);

6. For costs of suit herein; and

7. For any such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

The Litvaks demand a trial by jury on all claims that are so triable as of right.

DATED: January 26, 2024                    **LITVAK LAW GROUP, P. C.**

_____

Tom N. Yacko, Esq.
*Attorneys for Plaintiffs, URI LITVAK and MARIANNE LITVAK*

FIRST AMENDED COMPLAINT